You may notice the empty chair for Judge Shaw. He was unavoidably detained, but he will be participating in the case on the record and on the copy of the particular transcript of the hearing. So, whatever you say, let's try to make it as clear as possible so Judge Shaw will be able to understand what's going on. I'm sure he will, but even more so today. Not that you don't always do that, but... Today we have two cases to be orally presented and two which have been submitted on the record. For the record, the two submitted cases are 06-3206, Welch v. DA. The second submitted case is 06-3338, Hunter v. DA. The first case for oral argument is 06-1307, Central Admixture v. Advanced Cardia. Mr. Neal, you will retain five minutes rebuttal. Yes, sir. If you're familiar with the waiting systems, let's proceed. Thank you, Your Honor. May it please the Court, my name is Robert Neal. I am here on behalf of Advanced Cardiac Solutions and Charles Walden. Seated with me at the counsel table is Reuben Squire, co-counsel on the case, and seated in the first row in the back is Charles Walden, president of ACS, one of the co-dependents of this case. In 1987, the regents of the University of Southern California, the University of California, notified the National Institute of Health and Dr. Gerald Buckberg that they were going to abandon the patent application on the cardioplegia solutions which were eventually patented in this case. Dr. Buckberg had obtained funding from the National Institute of Health through the California school system to develop this cardioplegia. Therefore, it was a sudden invention of the liability patent. After Dr. Buckberg was notified that the regents of the University of California would abandon the case, he contacted NIH and asked to reobtain ownership of the patent. Just because our time is limited and we've raised about a dozen issues here, so let me get to the point that I think most in need of some clarification. And first and foremost in my mind at least is the certificate of correction. Yes. The district court here said that the certificate of correction was valid, right? Correct. And you have the burden of proving by clear and convincing evidence that it was not. Indeed. So what's your best case where you're not thinking about that? Well, Your Honor, as you know, the certificate of correction changed the term osmolarity to osmolality. The range of osmolarity set forth in the case is a range between 400 and 500 along a continuum that starts at zero and runs forward. When you change osmolarity to osmolality, you change the units of measure. Therefore, as the plaintiff stated in their case, in their brief, you have shifted the range. The units of measure changed. The physical objects that are contained within that range have been shifted. But they did have some expert testimony, but the question is whether or not it was of significant magnitude or whether or not it was apparent that it would have been osmolality in the first instance. And they did have some expert testimony, did they not, to that effect? They had some expert testimony, but osmolarity was the term that was used throughout the prosecution history, throughout the patent application, throughout all of the literature that was cited in the references. It was one of the two terms, osmolarity and osmolality, that could have been used. So this is a case in which a correct word was used, osmolarity, spelled the right way, the plaintiff's sentence in the sentence, just as osmolality did. And if you look back at the Superior Fireplace, whichever case that was, this is a type of change from one word to another that cannot broaden the claims. Is that the test that we really have that broadens a claim when a correction is invalid? Yes, Your Honor, that is the test that you have, that you have said, that this Court has said, that a claim is broadened when it encompasses within its scope subject matter that would not have been encompassed before such a correction was made. In this case, if you look at the plaintiff's own test, the ones run by Dr. Digeness, and what the district court said, you find that Dr. Digeness measured the osmolality of the defendant's materials, found this osmolality range running up to 398 on the schedule, and then calculated the osmolarity. The osmolarity should end up at 377. According to the court's interpretation of the claim, 385 was the playoff line of about 400 to 500. When the certificate correction was not in play, none of the compositions manufactured by the defendants fell within the range. Let me ask you about that part, though. Even if we were to agree with you, let's assume that the certificate was invalid, what position does that leave this case? Is there still pending claims or some initial claims raised with respect to infringement under the original definition of osmolarity? The district court correctly found that there was no evidence of infringement under the original definition of osmolarity. She refused to grant summary judgment to us on that on the basis of the doctrine of equivalence, which… Arguably, even if we were to decide that the certificate of correction is invalid, there's still a pending DLE claim on the original definition. The plaintiffs elected not to pursue damages for that and came to appeal. We feel they've waived their DLE claim. Furthermore, there were amendments in the specification to change the range, to change the language of the claim to say this range of osmolarity is at an increased level above the prior article. Since this osmolarity range is the same osmolarity range in all of the claims… But that's an issue that would be decided by the district court in the first instance, would it not? If they were to reach it, that's right, Your Honor. As we said, the plaintiffs withdrew those claims, so we don't think that they're in the case anymore. What about the different solutions that the district court did not cover in the warrant? Those were left on the table, I guess. Yes, Your Honor. Those solutions are the reprofusate solutions manufactured by our client. You have two different types of solutions that are used. One is an induction solution that has a higher concentration of potassium chloride. The other is a reprofusate solution that has a lower concentration of potassium chloride. The reprofusate solutions all have even lower ranges of osmolarity than the ones the plaintiffs selected to bring to the case. She made no determinations on that. No, Your Honor, she didn't. They were not presented to her. However, we, in our motion for summary judgment, asked her to rule on all of the compositions. So even as to those compositions, she made a determination that prior to the certificate of correction that they could not infringe. So there was determination there. But she made no determination as to whether it would be infringement under the doctrine. That's correct. Is this a question of law, the certificate of correction? Is that a question of law? I think it's a question of law. But when you look at what happens in this, the scope of the claim has to be determined. And that is, of course, a question of law. You then look to see whether that scope has changed and would it really include something that was not included before to determine whether the claim has been wrong. And the latter are questions of fact. So it's a question of law based on underlying facts. Correct. And so are you asking us to decide here in the first instance? Or is this something that we would just vacate if we have questions about the certificate of correction and have it sent back to the district court to have it sorted out? I think that the certificate of correction can be seen as invalid in this case simply when you look at the fact that it's changing the units of measure that are used for a range along this continuum. You cannot simply move along a continuum without encompassing something which was not previously within the range. But you say units of measure. On the other side, at least in the briefing, we can ask them here, too. I mean, their main argument against this, or one of their arguments against the certificate of correction issue, is that it's only possible to measure osmolarity. Yeah. Osmolality. Yes, Your Honor. And not osmolarity. The word measure is confusing. If you look at units, if you say zero is the beginning point and you run out and you define those units along there as osmolarity or osmolarity, the units will wind up at different places. Okay? So if you have 400 osmos, osmolarity out here, 400 osmolarity is going to wind up at a different physical place. So it's not really measurement, but it's the units that are used to describe the osmotic pressure. Yes, one is theoretical, one is calculated. But it creates a difference, as shown by their testing and calculations, as to where the range falls and what products are actually within that range. If the range were the same, the certificate of correction really wouldn't be considered. That's right. If osmolarity and osmolality meant the same thing, then the range would be the same. But they don't. No, even if they don't mean the same thing, if the range remained the same with the change, it would still be a valid type of money certificate of correction. If the range remained the same is not really the question. It's where the end points of the range shift to when you change the work. It's like taking an acre of land on the ground and saying it's 50 yards from the tree over there is where the acre starts. But then you say, no, I didn't mean 50 yards, I meant 50 meters. Now that's a different starting point, and you've got property that's not within that boundary of that acre. In other words, if there's a range of 100 yards, even if the range of 100 yards remains the same, you're saying there's a difference at the starting and the ending point. Exactly right. And when you do that, you have encompassed something which was not previously within what the claim addressed. I see that I'm into my rebuttal time. We asked you a few questions. We only have a question on standing with respect to the ownership of the patent. The NIH funded the original research. It was done through the University of California. The original patent assignment shows them as the assignees. There was a subsequent assignment to Dr. Brubeck. And it's subject to a license from the government. There was a letter that was sent by the NIH when they agreed to have the doctor become the assignee for the owner of the patent. One of those conditions was a license that had to be executed. There's no record of that execution ever being undertaken. Does that mean that the assignment to Dr. Brubeck is void or voidable? It is void, Your Honor. The regulations that apply to OFAC say that a university or small business concerned can only assign property under certain circumstances. They have to go to the government and say, we want to assign this property to this person. The regulation says that not only do they have to go to government, they have to also do that in accordance with the regulations. The regulations say that the NIH can say, inventor, you must sign this assignment and send it back to us. Dr. Buckberg has admitted that he has not signed the license agreement. So does that make the assignment void or voidable? It is void. Because the University of California had no authority to assign it to Dr. Buckberg without him having met the conditions set forth by the NIH. The government never exercised its right to take it. That's right, Your Honor. But we're not really concerned with whether the government exercised their right. We're concerned with whether Dr. Buckberg met the conditions imposed upon him by the government. And he never met those conditions. So do you think that the title to the patent is void and not voidable at this point? I think the assignment from the Regents to Dr. Buckberg is void, yes. I think they have no ownership and no say in it. So that's where we are on this particular question. Thank you. We will restore you for your time, if God wills it. Thank you. Mr. Williams, we'll add some time to your presentation if you need it. Thank you. May it please the Court, my name is Brett Williamson. I belong to the Montgomery & Myers LLP on behalf of the FLEs, the Central Administrative Pharmacy Services Agency, which has been referred to throughout the briefing as CAPS, and Dr. Gerald Buckberg. This case turns on three issues, each of which the district court got right. The court has already identified two of those three issues. In temporal order, if you will, those issues are the issue of standing. And the district court was right that the plaintiff's holdout of FLEs here, Dr. Buckberg as the inventor and the owner, and CAPS as the exclusive licensee, have standing to prosecute this patent case. Well, to go to that point of the assignment from the University of California, I know it was reported in the patent office, but part of the transfer was conditioned upon the inventor to grant the element a non-exclusive liability. There were both liabilities for the licensee. Was that executed? The record is unclear. The district court did deny the plaintiffs below the right to submit Dr. Buckberg's clarifying declaration. Dr. Buckberg, at the time the request for admission was submitted to him, could not recall, and therefore the admission was admitted when he was being prepared for his deposition. He actually, on reflection, believed he had executed that document. Based on the state of the record, you can assume that he did not. That is correct. And the argument of FLEs here does not depend upon the court inferring that such a license was executed. Our argument is quite simple, and that is, as the district court found, consistent with this court's decision in the Campbell Classics case, which also dealt with by goal, there is no automatic divestiture or automatic ownership by the government. The U.S. government, assuming that the underlying facts are even as appellants say that they are, had to have taken action to acquire title. They did not do so. It's clear, in addition, that the requirements of Section 202 were actually met here by the letter. The University of California, which had acquired title through an assignment from Dr. Buckberg, did execute the necessary contractor's license to the federal government in 1985. In February of 1987, the University of California informed Dr. Buckberg that they were transferring him the rights to pursue the invention as his own ownership. Dr. Buckberg went to the government. The government, pursuant to the same language used in by goal and in the CFR, said, here's what you need to do to retain title. So either Dr. Buckberg owned the patent, or the University of California owned the patent, under appellant's argument. But even appellants don't argue that the federal government ever owned the patent at any time in that period of time. So either way, the University of California's assignment to Dr. Buckberg in 1991, based upon the satisfaction by the letter of the by goal act, by that original license to the government, is effective, or Dr. Buckberg always had ownership, and it didn't even need the 1991 assignment. Either way, Dr. Buckberg is the owner, and therefore had the right to license exclusively to caps. And both of those parties were plaintiffs. So the title is not void according to their theory. It's voidable by the U.S. if they wanted to. I think it's clearly voidable under the language of by goal, under the CFR, and consistent with this court's decision in the appellant process. On the issue of the certificate of correction, as the court has noted, the appellants actually have ignored that there are two categories of allowable corrections under Section 255. The first is where, and this is language from this court's superior bar test case, it's clearly evident from the intrinsic evidence how the error should be corrected. In those cases, a broadening correction is permitted. So putting aside for the moment the argument that a clear intrinsic evidence standard would be met simply by showing a broadening, that's actually not the law. And the unrebutted testimony in the record by Dr. Diagnos is that one skilled in the art would know by looking at the intrinsic evidence that it's physically impossible to measure osmolarity of a blood-based solution. Therefore, the use of osmolarity was a mistake and should have been osmolality. I know you mentioned the measure issue in your briefs. I'm not clear on why the measuring issue is dispositive. Because if you measure osmolality, you can calculate osmolarity. So I don't understand. I don't see anything in the spec that leads us to have this measuring issue be the outcome determined. Certainly. The patent is supposed to instruct one skilled in the art how to create the invention. The testimony of Dr. Diagnos, who is one skilled in the art and has not been disputed, stated that the only way for one trying to recreate the invention disclosed in the 515 patent would be for them to measure this blood-based solution, because you're combining the crystalloid with the blood. The only way you can come up with these ranges of milliosmals, and whether that's milliosmals per kilogram, which would be osmolality, or milliosmals per liter, which would be osmolarity, you cannot determine whether you're in that range without measuring. So that's the answer to that question. In addition, there is evidence in the intrinsic record, as noted by the special master who was appointed by the court as part of the Markham Procedure, that an osmometer was used to measure the vapor pressure depression calculation, and that was Dr. Buckford's team at the time they were devising the formula here. So this evidence is unrebuttable. Their expert did not state that one skilled in the art, looking at the intrinsic evidence, would assume that osmolarity was correct. The only testimony at this point, and it's very persuasive testimony, is that one skilled in the art would know it had to be osmolality. Mr. Buckford, one of the aspects that bothers me, and I'm still trying to resolve, is the fact that a certificate of correction really gets little review by the patent office. It's almost a non-manic addition, by no means. Why wasn't the amendment or the change submitted instead of a certificate of correction submitted to reissue? The patentee reading the text of Section 255 believed that this sought-after correction met the requirements of Section 255. Or any reading of formula. That may be the more accurate statement. But Section 255 does clearly state that if there is a mistake of minor character or a typographical error, and this court has expanded on that in Superior Fireplace, then a certificate of correction is the appropriate means of correcting a patent. Because it's not a change. And again, applying that into this case, the only testimony on the issue is that there was not the sort of change that would have required reexamination or some sort of post-issue amendment. But that's almost like saying that if a patent indicates yards instead of meters, and then you change it by a certificate of correction to meters, that makes a substantial difference as far as distance is concerned. It would, but there may be cases, I would submit, that in context, anyone skilled in the art would know it would have to be meters. For instance, if meters was compared to other metric measurements within the patent disclosure of the claims. And that, under Section 255, would, in that case, even allow that type of change. Well, that's true. If everything in the patent was in metrics, and only one portion was in yards versus meters, then obviously that would be a certificate of correction. But if everything was in yards, measured in yards, and all of a sudden meters comes up, it would be a basic change in the specification. I don't disagree with the court on that hypothetical. That's not this case. But it has to be clearly evident, correct? It has to be, using this court's language, clearly evident from the intrinsic evidence. And where's the, actually the expert did not say that it was clearly evident that it was a mistake. Yes, he did. The expert stated that one skilled in the art would have to know that it was osmolalic. Well, actually, maybe I'm looking at it the wrong way. The citation that I thought was provided in the brief quotation I was able to figure out is a person skilled in the art could discern that use of the term was a mistake. Could discern seems to me somewhat different than clearly evident. I mean, a lot of people, a person skilled in the art could discern a lot of things. But that doesn't, he's not, to me that's different than saying it was clearly evident that it was a mistake. If the appellate happily would accept that difference, I'm not sure, but that's But that's the quotation. The issue then turns on who has the verdict. And again, here, we point out as a measure of clear contrast that the only evidence presented on this first category of allowable changes was by the plaintiffs below. Clear and convincing evidence standard requires the defendant below to point out the invalid. And here they didn't do that on the first category. Our main case, our main precedent on the Superior Fireplace was, seemed to me, in the case, and we're reading it from the appellate level perspective, that the court there was comfortable in looking at the intrinsic evidence itself while making the determination. And I don't think there was any expert testimony brought in by either side of the case. So doesn't that sort of deflate your view of, your burden in terms of clear and convincing evidence? I don't think it changes the normal analysis on validity and presumption that the patent is entitled to. And that's, again, only on the first category. The second category, even if you assume that this was not the type of mistake that was clearly evident on the face of the patent, I mean, the district court addressed both of these arguments and did address the second argument, which is if it was a change of minor character, then broadening corrections are disallowed. The court had before the evidence of both sides and concluded that there was not clear and convincing evidence of the type of broadening that would have made this change improper under Section 255. Why would it not be broadening? I mean, you listened to the exchange with Mr. Veal earlier. I think the district court conceded or agreed that there would be infringement under one construction and not infringement under the other. Well, if that's the case, how can it not satisfy the broadening part? My response is twofold to that. The district court had an opportunity to grant summary judgment on behalf of the defendant and did not. So it's a misstatement to say that the court has determined that there is no infringement under the pre-certificate of correction patent. That is the patent that uses the word osmolarity. Well, there's no little infringement. Well, I'm not sure that's the proper interpretation of the court's order. The court did not reach the issue, decided there was an issue of fact as to whether or not there was infringement. Among the court's reasoning for denying summary judgment was that the deduction of equivalence could be applied in the pre-certificate of correction patent. But moreover, the issue here is really going back to the burdens. By pointing to the fact that one claim, or I should say the post-certificate of correction patent, had clear and undisputed evidence of literal infringement, and yet summary judgment could not be issued on the other, is taking the preponderance of the evidence standard, which applies to infringement, and applying it to the defendant's burden on validity. It's essentially giving the appellant a lessened burden that it has because of the presumption of validity. It was up to the defendant to provide clear and convincing evidence at that stage of invalidity in the pre-certificate of correction. And the district court had that evidence before it and made the determination that there was no, even if it's the second category of corrections under Section 255, that there was no impermissible property. Let me just add, do you agree with the other side's view of what the standard is here, what underlines facts, and how can the question evolve? It is the usual debate about validity. It is validity of a certificate of correction. So it's an issue of law that requires determination in some cases of disputed facts. And what about if we were to, hypothetically, if we were to argue with the other side, that the certificate is valid, what's left in this case? Well, there certainly has not been a waiver of any rights to pursue pre-certificate of correction infringement. The state of the record is that upon the granting of summary judgment on the limited issues that were presented at the pre-trial conference and prior to the appeal, our client instructed us to inform the trial court that we would pursue certain of these issues. But certainly, if there is a reversal or a remand here, if there's anything that would require, because the state of the case, the law of the case has changed with respect to what patent is being prosecuted, that there would be any preclusion on the plaintiff moving forward. It's probably too long an answer to tell you. I believe there would be a case of determining infringement under the pre-certificate of correction patent. Was there at any time there were DOE allegations or infringement allegations with respect to that? Yes. So we would still have a patent infringement case. We would have one, presumably, as the patent reads prior to the certificate of correction. And you have retained a DOB. We've gotten some of that too, so DOB is still on the table. That's correct. Excuse me. In all of this, I didn't read in any of the cases where we impose any kind of materiality type of analysis on the certificate of correction. Whether or not there's a material change that a good tester included in that. Well, you would probably be the best ones to determine whether or not there's a lack of clarity in Section 255. Our view is, and certainly it's colored by the factual posture of this case, is that Section 255 does lay out a fairly specific test for determining whether correction should be allowed. I understand that. But just thinking a little bit about that, would materiality have any kind of play in the certificate of correction type of analysis? Whether the change is material or not? I'm afraid, maybe I'm taking this question too literally, but use of the term materiality either in a court-initiated test or in the legislation itself would not advance the determination because you'd be left trying to decide what's material, what's not material, and you would think you would be back at square one with regards to whether or not the public notice function of the patent was being fulfilled, even when it's corrected by the certificate. Just skipping around to an entirely different question, which is the role of the hearing to have summary judgment over. Correct. Is it your view of the law that would it be, is it sufficient to grant summary judgment hypothetically, simply because there's no opinion of counsel or it's clear that the opinion of counsel would be competent? Is that in and of itself sufficient to grant summary judgment? That I will candidly say that has never been my view of the law or of this court's opinions. Here, that is clearly not the case. There is significant evidence of copy in terms of Mr. Wall having been the director of pharmacy for CAHPS for six years, starting this enterprise as a separate entity even before he terminated his employment, admittedly knowing about the patent, knowing about the solutions that plaintiff CAHPS knew were encompassed by the patent. Admitting his intention to serve the same customers, and as the record reflects, this is not something where there can be small variations. These solutions are prescribed by hospitals in a prescription. It's like we would go to the pharmacy. We have to make the solutions based upon the prescription, and those are the same prescriptions that have been given to CAHPS and tested in this case. And despite all of these facts, it makes the absence of a competent opinion even more relevant, we believe. Thank you. Thank you, Mr. Williams. Mr. Beal. Mr. Beal. Thank you, Your Honor. As Mr. Williams just said, they intend to get over the hurdle that we see in their way regarding the missing license from Dr. Buckberg to the NIH by a declaration from Dr. Buckberg that he thinks he did sign one, whereas he previously admitted that he did not. There is no document. They have never in nine years produced the document. The title is void of it. Can't you just sign the license right now and not correct the error? No, Your Honor, I don't think so. This document that purported to give him title was executed in 1991. It would not give him title back to that time. If he were to sign a license now and present it to the government after all of this happened and ask the government to now give him this license after this great passage of time and the change of circumstances and the competition out there, I don't think- Is the public on notice that the government has a license? The public is on notice that the government has a license, but it's not the public necessarily that's involuntary. The regulations say that the subcontractors, those who take in title after the contractor, is going to be subject to the same conditions as the original contractor, including the conditions that they also execute a license, so that the government can keep track of who their licensees are. And when the subject matter is presented to the government, they know that this subject matter is presented to the government. But you see them issuing a license to the public? The University of California? You see them, yes, Your Honor. The original assignment? Correct. That same- Right. And the UC also inquired with the NIH as to whether Dr. Buckler also needed to issue a license because they had previously done so. And the response that Dr. Buckler was told by the university, according to the documents that were attached to his assignment from California, from the university to him, said you have to sign a license and submit it. So- But you're alleging that that condition basically makes the assignment void of the condition? Yes, sir. They have no authority to sign it. The government is not acting to avoid the title of the original assignment. Yes, sir. And they have the right to do that if they take it. To that point, if the doctor does sign a license to the government, they probably would not change it. I have no idea whether they would. That's a formal aspect of it. At the time that they made the determination in 1987, the determination was made because there was no asset, there was no body who wanted to make this product. Now CAPS has taken this product and made billions of dollars off of federally funded research. We returned none of it to the government. So far as we know, there's no record that they had. Now there is a government interest in this patent. It is a viable patent. At the time that they made that determination, it was not a viable patent. Mr. Beal, getting back to the certificate of correction, given the fact that Mr. Williamson is correct and hypothetically if we remand and determine that the certificate of correction was invalid, does that leave the entire case open on the original patent on both all of the solutions plus the OE? No, Your Honor. The court has already found, and I think it's in appendix page 64, that there is no evidence of direct infringement, on the evidence that has already been submitted on summary judgment. No evidence of direct infringement prior to the issuance of certificate of correction. Left open the issue of the doctrine of equivalence, we think that improperly left open because we do believe it was waived under Bethesda arguments. Plus when you get claim construction, we think the court was clearly wrong in construing the term about. And if you look at the court's recent case of the Morocco pharmaceutical or whatever it was, you need to look at the about in the context of the case. That about, where the lower court allowed a range down to 385, stands in blatant disregard of the patentee's statements in the specification that the prior art was below 400. That high osmolarity in accordance with the intention was above 400. So when you look at what about really should be. Well, what about figure, we're talking about that then. What about figure two, which clearly has a line going through what appears to be 390? Certainly. And look at what the patentee said about figure two. The patentee said that the results below 400 provide inconsistent results. Okay? Not an improved result, but an inconsistent result. If you look at figure two. So what does above mean? I mean above is we have to give it some evidence in the patent. Sure. And at the time that the patent was being issued, there was an argument being made between the patentee and the patent office about 400, 360. The primary references in the case were at 360. The secondary reference here was at 402. The patentee submitted a commitment saying we have an increased level of osmolarity at about 400 to 500. There's no way that you can say it's below 400, it's above 400, it's above 400, it's above 400, and now come back and say about means it's also below 400, particularly in the prior art. But I guess I'm wondering, assume if hypothetically you were to reverse on the certificate of correction, is that even relevant? I mean, the claim construction, as I understand, your product is 349 to 377. So it's still below. So even if the construction is 385 is the bottom number, you're still below. What are you saying that might impact the DOE analysis? What I'm saying is there is no infringement under any circumstances. But assuming there's still a live DOE claim. I don't think that. Is this relevant? I mean, you know. Well, for us to be deciding reviewing the claim construction if indeed the certificate of correction is reversed. I'm not sure I understand your question. You're asking me is claim construction relevant? If we were to reverse the certificate of correction, is our reviewing the district court's claim construction still relevant? If they wish to pursue the DOE, I think that there has to be proper claim construction so that you can determine what would be equivalent to a properly construed claim. If you have an improperly construed claim, then you may have equivalence which should never be considered because they would not have been considered with a properly construed claim. Thank you, Mr. Neal. Case is submitted. Thank you for your arguments.